COMMERCIAL REFRIGERATION,
INC., Plaintiff,

v.

LAYTON CONSTRUCTION CO.,
INC. and Reliance Insurance
Company, Defendants.

Layton Construction Co. Inc.,
Counterclaim Plaintiff,

v.

Commercial Refrigeration, Inc.,
Counterclaim Defendant.

Layton Construction Co., Inc.,
Third Party Plaintiff,

v.

Boman & Kemp Rebar, Inc.,
Third Party Defendant.

No. 2:01CV 210.

United States District Court,
D. Utah,
Central Division.

May 14, 2004.

Eric P. Lee, Craig G. Adamson, Craig A. Hoggan, Dart Adamson & Donovan, Salt Lake City, UT, for Plaintiff.

Korey D. Rasmussen, Robert W. Thompson, Snow Christensen & Martineau, Salt Lake City, UT, for Movant.

Roger D. Henriksen, Paul C. Drecksel, Jeffrey Dean Stevens, Parr Waddoups Brown Gee & Loveless, Salt Lake City, UT, for Defendant.

### ORDER

DEE BENSON, Chief Judge.

Before the Court are Layton Construction Company's application to confirm an arbitration award and the motions of Commercial Refrigeration Incorporated and Boman & Kemp Rebar Incorporated to vacate the same arbitration award. Having considered the parties' arguments, briefs, and the record, the Court now issues the following order. ·

BACKGROUND

This case arises out of a contract between the Salt Lake City Organizing Committee for the 2002 Olympic Winter Games (SLOC) and Layton for the construction of a speed skating oval in Kearns, Utah. (Layton's Memo ISO Application to Confirm at 2.) Layton entered into subcontracts with Commercial Refrigeration for installation of refrigeration piping in the speed skating oval slab and with Boman & Kemp for installation of rebar. (*Id.* at 3.) After the first concrete pour for the speed skating oval, in November, 1999, rebar and tie wire were visible at the surface of the concrete slab, and it was subsequently determined that refrigeration piping floating out of its support chairs had displaced the rebar. (Layton's Memo ISO Application to Confirm at 3–4.) The first oval slab did not meet with project specifications and was rejected by SLOC (*Id.*)

A dispute arose among Layton, Commercial, and Boman regarding responsibility for the failure of the first pour, and Commercial initiated the present action on April 28, 2001. (*Id.*) Both subcontracts included a provision providing for binding arbitration in the event of a dispute. (*Id.* at 3.) On October 15, 2001, this Court stayed the action brought by Commercial in order to permit mediation and arbitration. (*Id.* at 4.) After attempts at mediation failed, the parties proceeded to arbitration, and on November 14, 2003, the arbitrator's award was transmitted to the parties. (*Id.* at 4–5.) The award provides that Commercial pay Layton $173, 289.78 in damages and administrative fees and that Boman & Kemp pay Layton $274, 023.07 in damages and administrative fees. (*Id.* at 5.)

Layton filed an application to confirm the arbitration award on November 24, 2003; both Commercial and Boman objected, and filed motions to vacate the award.[1] (Docket Nos. 32–1 & 34–1.) At a hearing on March 17, 2004, all parties additionally

---

1. The Court ruled on various motions regarding the rights of Commercial and Boman to file motions to vacate in a hearing on March 17, 2004.

requested an award of attorneys' fees for the action before this Court.

STANDARD OF REVIEW

 Layton makes its application pursuant to the Federal Arbitration Act (FAA),[2] which provides that the Court "must grant . . . an order [confirming the award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9.[3] The award that results from arbitration to which parties to a contract have bound themselves is not particularly amenable to judicial review. Indeed, the standard of review is "among the narrowest known to the law." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir.1995). Bearing in mind that the parties to binding arbitration have contracted to use arbitration rather than litigation as a means of resolving disputes, and that arbitrators are generally selected for their expertise in a particular area, courts accord maximum deference to an arbitrator's decision. *See id; Bowen v. Amoco Pipeline Company*, 254 F.3d 925, 936 (10th Cir.2001). This deference is given to findings of fact: "[e]rrors in the arbitrator's . . . findings of fact do not merit reversal." *Bowles Financial Group, Inc., v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1012 (10th Cir.1994). It is also given to legal conclusions: "[a]n arbitrator's erroneous interpretations or applications of law are not reversible." *ARW*, 45 F.3d at 1463. Added to this extraordinarily deferential standard of review with regard to arbitration awards generally is the rule regarding arbitrators' interpretations of contracts: "Whether the arbitrators misconstrued a contract is not open to judicial review." *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203 n. 4, 76 S.Ct. 273, 100 L.Ed. 199 (1956). Central to the law of contracts is the idea that the law should respect parties' intentions to contract for particular rights and remedies, and judicial review of a contractual

---

**2.** Layton has invoked this Court's jurisdiction pursuant to the Federal Arbitration Act and 28 U.S.C. § 1332. (Commercial, a resident of Canada, originally sued Layton, a Utah resident. (Layton App to Confirm at 6.) Boman was impleaded as a third-party defendant, and alleged counterclaims against Layton. (*Id.*)) While Layton cites federal precedent as the "more likely governing law," (Layton Reply Memo to Boman's Objection at 1 n. 1), both Boman and Commercial cite Utah law in support of their characterization of the proper standard of review. The Tenth Circuit Court of Appeals' interpretation of the FAA is quite clearly binding on this Court: to the extent that the parties have brought their claims within the framework of the FAA, federal law controls. It is far from clear, however, that Boman and Commercial have endeavored to rely on the federal act in framing their motions to vacate. Commercial cites § 10 of the Act, but purports to explicate the meaning of that section by reference to a Utah Supreme Court case. (Commercial Memo ISO Motion to Vacate at 14.) Boman cites the same Utah case as well as case law from the Fifth Circuit Court of Appeals and the district of Utah. While this confusion in the briefs is regretta-

ble, it does not ultimately affect the outcome. While the Utah Supreme Court cites the Utah Arbitration Act in *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, the Court observed that the Utah Act is nearly identical to its federal counterpart, and explicitly "adopt[ed] the federal courts' interpretations [of the federal act] as Utah law." 925 P.2d 941, 948 n. 5 (Utah 1996).

**3.** The mandatory language requiring the court to enter an order confirming an arbitration award only applies "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." 9 U.S.C. § 9. Layton's contracts with Commercial and Boman include sections which render the mandatory language of section 9 of the FAA applicable: "In the event of arbitration, the award rendered by the arbitrator . . . shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." (Subcontract Agreement between Layton and Commercial, § 8.5; Subcontract Agreement between Layton and Boman, § 8.5.)

mechanism for dispute resolution is accordingly narrowly confined: "[B]y agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the court room for the simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)). Having agreed to make that trade, the parties cannot easily set aside the arbitration award for which they bargained.

## ANALYSIS

■ The standard of review outlined above defines an exceedingly narrow scope for judicial review. If this Court is not at liberty to second-guess the arbitrator's findings of fact, legal conclusions, or interpretation of the contract, however, there are statutory and common law exceptions to the general rule that courts do not overturn even flawed factual or legal conclusions made by an arbitrator. The FAA permits inquiry into whether an arbitrator has exceeded his authority.[4] 9 U.S.C. § 10(a)(4). The courts have also created an exception to the general rule: courts can intervene to correct an arbitrator's decision that manifests a "willful inatten-

tiveness to the governing law." *ARW*, 45 F.3d at 1463.

■ Boman argues that the arbitrator was wilfully inattentive to principles of contract law requiring that the intentions of the parties determine issues of contract formation and interpretation. Given that "[e]rrors in the arbitrator's ... findings of fact do not merit reversal," *Bowles*, 22 F.3d at 1012, it is most unlikely that this Court would disturb the arbitrator's decision regarding the intentions of the parties to these contracts. That the arbitrator was not wilfully inattentive to the legal consequences of his factual determinations is evident from the Award's careful and thorough discussion of the ongoing debate regarding tying the rebar during the mockup and subsequent oval pours. (*See* Award at 4.) Boman appears to suggest that because "the briefs filed by Boman & Kemp repeatedly referenced the law with respect to contracting parties requiring a meeting of the minds and that the intentions of the parties determine the responsibilities of the parties," the arbitrator's resolution of the issues in a manner that conflicted with the outcome urged by Boman is in manifest disregard of the law. (Boman Memo ISO Motion to Vacate at 4.) That the arbitrator disagreed with a party's legal position is not evidence that the

---

**4.** Boman appears to invoke the FAA's standards when it cites the Utah Supreme Court's observation that "[i]f an award is 'without foundation in reason or fact,' the arbitrator may be found to have exceeded his authority." *Buzas Baseball, Inc., v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 950 (Utah 1996). From this "irrationality principle" Boman moves to "manifest disregard of the law" as the relevant standard to which courts should adhere when altering or vacating an arbitrator's award. (Boman's Memo ISO Motion to Vacate at 3–4.) Boman cites case law from the Second Circuit Court of Appeals in support of its interpretation of the "manifest disregard of the law" standard. (*Id.* at 4.) For its part, Commercial cites ¶ 10(4) of the FAA

explicitly, but turns immediately to *Buzas Baseball* for a definition of that standard and arrives at the same "manifest disregard of the law" standard adopted by Boman. The Tenth Circuit Court of Appeals treats "manifest disregard of the law" as a "judicially crafted exception to the general rule that arbitrators' 'erroneous interpretations or applications of law are not reversible.'" *Bowen v. Amoco Pipeline Company*, 254 F.3d 925, 932 (10th Cir.2001) (quoting *ARW*, 45 F.3d at 1463). This Court does not need to resolve the apparent confusion regarding the source and interpretation of the appropriate standard of review since neither Boman nor Commercial have met any of the possible candidates for the legal standard.

arbitrator ignored controlling law, but merely that the arbitrator disagreed with that party's position. This Court is not permitted to determine whether the arbitrator applied the law of contracts correctly, but only whether the arbitrator deliberately ignored the relevant law, and it is evident that he did not.

Commercial argues that various interactions between the parties' employees prior to the failed oval pour constituted a modification or waiver of the parties' contractual obligations. Like Boman, Commercial seems to suggest that the arbitrator's failure to adopt its position, despite the fact that that position was pointed out to him repeatedly, manifests a disregard for controlling law: "At Summary Judgment, and again at the hearing, [Commercial] presented several theories addressing the legal significance of Layton's on-site decisions regarding tying.... The Arbitrator rejected each of [Commercial's] legal theories on Summary Judgment, and again at the Arbitration hearing." (Commercial Memo ISO Motion to Vacate at 15.) Rejecting an argument as to the proper legal outcome on disputed facts is a very different matter than ignoring controlling law. The arbitrator did not ignore Commercial's legal analysis, but disagreed with it: "I find that the non-action of Layton in allowing the tying to proceed as desired by Commercial did not constitute a modification of the contract nor a waiver of its terms." (Award at 6.) Whether the arbitrator resolved the legal issue correctly is not a matter for this Court to determine; the Award makes manifest the fact that the arbitrator did not ignore relevant law.

Commercial also complains that the quantum of damages awarded by the arbitrator is unsupported by the evidence. (Commercial Memo ISO Motion to Vacate at 19.) Layton maintains, however, that it offered credible and competent evidence capable of proving the extent of its damages, and that the award was appropriate. (Layton Memo in Opp. to Commercial's Motion to Vacate at 31.) The standard of review outlined above precludes this Court from inquiring into the adequacy of the evidence offered. The determination that the arbitrator neither exceeded his authority in making the award nor manifestly disregarded the law ends the judicial inquiry.

## ATTORNEYS' FEES

■ While losing an arbitration may be unpleasant for an attorney to communicate and a client to digest, the experience is not significantly improved by the instigation of a doomed—and no doubt costly—legal action. Having in mind the standard of review and its effect on the relative strengths of the parties' positions, the Court grants Layton's motion for an award of reasonable attorneys' fees in the action before this Court.[5]

---

**5.** It is interesting to note that *Buzas Baseball,* the Utah Supreme Court case on which both Commercial and Boman rely for their discussion of the standard of review of arbitration awards, contains some very broad hints that an award of attorneys' fees would be appropriate on remand:

> [W]e conclude that an award of attorney fees to the Trappers [the party seeking to uphold the arbitrator's award] at the trial court level would appear to have been justified ... [I]f the trial court determines on remand that the Trappers are entitled to

their reasonable attorney fees in defending the arbitration award, they are also entitled to their reasonable attorney fees in bringing this appeal."

925 P.2d at 954. Both federal and state decisions regarding judicial review of arbitration awards make it abundantly clear that the pertinent standard is very, very difficult to meet, and parties would be well-advised to take that standard into consideration before undertaking to persuade a court to vacate an arbitrator's ruling.

CONCLUSION

For the reasons given above, Layton's application to confirm the arbitration award is GRANTED. The motions of Commercial and Boman to vacate the arbitration award are DENIED. Layton's motion for attorneys' fees is GRANTED.

**IT IS SO ORDERED.**