NO. 07-05-0385-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 24, 2007
_____

P. MCGREGOR ENTERPRISES, INC., A TEXAS CORPORATION,
AND INN II, LTD., APPELLANTS

V.

DENMAN BUILDING PRODUCTS, LTD., APPELLEE
_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 92518-E; HONORABLE ABE LOPEZ, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellants, P. McGregor Enterprises, Inc. and Inn II, Ltd., appeal a judgment confirming an arbitration award against them in a dispute over a commercial construction project. We modify the trial court's judgment and affirm the judgment as modified.

The facts surrounding the two construction projects giving rise to this litigation are complicated and we recite only those facts pertinent to the appeal. Paul McGregor is the owner of P. McGregor Enterprises, Inc. (PME). His wife Angela controls Inns, Inc., the

general partner of the Inn II limited partnership (Inn II). Inn II contracted with PME for construction of a hotel on property it owned in Amarillo. PME made a contract with Hicks Construction Group[1] (Hicks), which subcontracted with Denman Building Products, Ltd. for a substantial part of the materials and labor. PME had an existing relationship with Hicks based on another construction project at a hotel in Lubbock. Denman was also a subcontractor on that project. PME terminated the contract with Hicks on both projects and contracted directly with Denman to complete construction of the Amarillo hotel. The PME-Denman contract[2] contained an arbitration clause.

Asserting Denman, Hicks and others had engaged in conduct which inflated the cost of the project, PME refused to pay a portion of the contract price. Hicks, Denman and other subcontractors filed liens against the Amarillo property. Denman made a demand for arbitration in November 2003 with the American Arbitration Association. The demand named PME, Paul and Angela McGregor individually, and Inn II as respondents. Denman's demand included its claim for unpaid amounts under the construction contract of some $350,000, and its request for foreclosure of its lien.

---

[1] The Hicks Construction Group included a limited liability company operated in Tennessee and a limited liability partnership which operated in Texas. The distinction between these entities is not relevant to this appeal.

[2] With few modifications, the contract was a 1997 AIA form A401 ("Standard Form of Agreement Between Contractor and Subcontractor") published by the American Institute of Architects. It called for arbitration of claims following mediation, both in accordance with the construction industry rules of the American Arbitration Association. The contract referred to a prime contract between PME and Inn II, but the record provides no information about the form or terms of that contract.

2

The following week PME filed suit against Hicks and other defendants including Denman.[3] The petition asserted claims for breach of contract, civil conspiracy and negligence arising out of both the Lubbock and Amarillo construction projects. PME's petition also sought removal of the cloud "placed on PME's ownership of the property" by liens filed by Hicks, Nance, Denman and RSM Builders Supply.

Denman's answer to PME's petition included a motion to stay the suit and compel arbitration. It filed a brief in support stating it sought arbitration of its right to payment under its contract with PME, but made no mention of its lien on the property. The parties later filed an agreement pursuant to Rule of Civil Procedure 11 providing claims by PME against Denman and Nance, and claims by Denman against PME concerning the Amarillo project, would be resolved by arbitration while the claims concerning the Lubbock project would be resolved through litigation. The agreement made no reference to Inn II.

After the Rule 11 agreement was filed with the trial court, the respondents answered Denman's arbitration demand. The response referred to the Rule 11 agreement, and stated that "pursuant to that agreement," the "parties to this arbitration case are: Claimant Denman, Nance, and Respondents McGregor [PME], Paul and Angela McGregor and Inn II." The response also included the statement, "This pleading is submitted without prejudice to Respondents' ability to assert claims in the [trial court] that are not involved in this arbitration proceeding."

---

[3] In addition to Denman, defendants included Hicks Construction Group, LLC, Hicks Construction Group, LLP, Billy Hicks, Patricia Hicks, Donald Q. Hicks, R.S.M. Builders Supply, Inc., and David Nance (Denman's president).

3

The response included allegations that the lien Denman filed against the Amarillo property[4] was fraudulent, and filed in violation of section 12.002(a)(1) of the Texas Civil Practice & Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a)(1) (Vernon 2002). The response requested relief including a determination that the lien be removed and damages pursuant to section 12.002 against Nance and Denman. Shortly before the arbitration hearing counsel for appellants wrote to Denman's counsel to question why Inn II and the McGregors were parties to the arbitration since they were not parties to the contract between PME and Denman. The letter acknowledged Denman "may have lien rights against Inn II" but stated that counsel was not aware of any claims against the McGregors individually, and sought "clarification" of the matter. We find no response to that letter in the record.

The parties participated in a two-day arbitration hearing in May 2004. Two attorneys appeared jointly on behalf of PME, the McGregors and Inn II. They voiced no jurisdictional objection when the arbitrator asked if there were any preliminary matters, but at the end of the opening statements, one attorney for the respondents stated:

> Our request, and we've said this in our pleading, is that the individuals and the corporation, Inn II, who are not parties to the contract and who do not appear to face any personal or corporate responsibility for the contract allegations here, be dismissed from the arbitration proceeding. And I don't know if now is the right time to urge that request . . . .

The arbitrator concluded the request was "probably premature" and suggested he raise the issue at the close of Denman's case.

---

[4] The response referred to the property as "McGregor's property in Amarillo."

4

In a post-hearing brief, appellants argued the arbitrator lacked jurisdiction over Inn II and the McGregors because they had not entered any arbitration agreement. The remainder of the brief addressed the merits of the issues before the arbitrator and those arguments were made subject to the jurisdictional challenge. Denman argued any jurisdictional complaint had been waived by the failure to raise it in the initial response as required by rules of the American Arbitration Association.

The arbitrator's award found PME liable to Denman for the outstanding contract balance of $356,906.24, and $17,228.30 in pre-judgment interest. It awarded Denman attorneys fees of $40,605.55 against PME and declared Denman's lien against the Amarillo property was perfected in the amount of the outstanding contract liability. The award directed PME to pay the arbitration expenses of $17,639.18.[5]

Denman sought confirmation of the award and, after service of process on Inn II and denial of its challenge to the joinder, the trial court rendered an order confirming the award. The order also denied the jurisdictional challenge of Inn II and the McGregors and severed confirmation of the award and all other arbitration issues to a new cause number. After a hearing the trial court overruled appellants' motion to vacate the award. In August 2005, the court rendered another order, titled final judgment, which recited confirmation of the arbitration award, added $27,104.49 in interest for the period between the arbitration award and July 11, 2005 and $16,150.00 in attorneys fees through the judgment with additional

---

[5] The award imposed no monetary liability on the McGregors or Inn II but a bill from the American Arbitration Association listed each of the respondents as liable for the arbitration costs.

5

amounts on appeal. Those amounts were awarded against PME only. The judgment separately recognized Denman's lien "securing all sums awarded in this judgment" against the Amarillo property owned by Inn II. It directed sale of the property to satisfy the debt.

The trial court made findings of fact and conclusions of law in support of its judgment. It found Inn II fully participated in the arbitration proceeding without objection and neither PME or Inn II had offered a valid basis for overturning or altering the arbitrator's award. It also found their efforts to vacate the award were groundless and brought for the purpose of delaying confirmation of the award.

Appellants contend this case is governed by the Federal Arbitration Act (FAA)[6] and Denman does not expressly disagree. We will look to case law applying the federal act.[7]

---

[6] 9 U.S.C. §§ 1 - 16.

[7] Appellants assert the federal act applies to the exclusion of the Texas General Arbitration Act (TGAA) and the common law because the contract at issue "evidences a transaction involving commerce." 9 U.S.C. § 2. They cite *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding), for the proposition that "if the FAA applies, it preempts the TGAA." The statement is overbroad. In *Nexion Health*, the court followed the established body of law holding the FAA preempts state law only to the degree the state law burdens or impedes the enforceability of an otherwise valid written arbitration agreement that involves or affects interstate commerce. 173 S.W.3d at 69. *See also Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992). In *Nexion Health* the court found a requirement of the TGAA was preempted by the FAA because the requirement "interferes with the enforceability of the arbitration agreement." 173 S.W.3d at 69.

Following federal law, the Texas Supreme Court has expressly rejected the contention that the FAA and TGAA are mutually exclusive. *See In re D. Wilson Const. Co.*, 196 S.W.3d 774, 779 (Tex. 2006) (orig. proceeding) (following *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.* 489 U.S. 468, 477-78, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Both acts may be applicable simultaneously. *D. Wilson Const.*, 196 S.W.3d at 780. Further, the TGAA did not displace common law arbitration and agreements outside the scope of that act are enforceable as any other contract. *L. H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 350 (Tex. 1977).

6

POINT 1

By their first point, appellants assign error to the trial court's confirmation of the award against Inn II. They contend Inn II never agreed to arbitration. We overrule the point.

The relief the trial court granted Denman against Inn II was foreclosure of Denman's mechanic's lien against the Amarillo property owned by Inn II. Appellants do not argue the arbitrator was wrong to decide the issue of the validity of Denman's lien. As noted, PME raised the issue in its district court pleadings by its assertion the liens filed by Denman and others were "meritless" and its requests for removal of the liens and damages under Civil Practice and Remedies Code § 12.002. When Denman demanded arbitration, seeking foreclosure of its lien among other relief, appellants again asserted in their response that the lien was fraudulent[8] and again sought its removal and § 12.002 damages. As we perceive their contention, the issue appellants present is whether Inn II can be bound by the arbitrator's decision upholding the validity of the lien.

As the Texas Supreme Court has noted, because arbitration is contractual in nature, the FAA generally "does not require parties to arbitrate when they have not agreed to do so." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005), quoting *Volt*

---

[8] Appellants' response contained this paragraph: "Nance, acting on behalf of Denman, filed a mechanic's lien in 2003 against McGregor's property in Amarillo falsely and fraudulently claiming unpaid amounts due and owing by McGregor. Upon information and belief, this lien was not filed for any legitimate purpose but solely to cause emotional distress to McGregor's beneficiaries, and to cause financial harm to McGregor, to use as leverage to extort additional unearned monies from McGregor, and to tie up the title to the land and to cloud the title to the land, all to cause McGregor damage."

*Information Sciences,* 489 U.S. at 478-79. Denman contends Inn II waived any objection to the arbitrator's authority by failing to make a timely objection. In support of its argument it cites cases including *Conntech Development Co. v. Univ. of Connecticut, Education Properties, Inc.*, 102 F.3d 677, 685 (2nd Cir. 1996); *Executone Information Systems, Inc. v. Davis*, 26 F.3d 1314 (5th Cir. 1994); and *Ngheim v. NEC Electronics, Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994). We do not agree the cited cases hold that a waived objection can substitute for an agreement, or that an agreement to arbitrate can arise from a party's mere failure to advance a timely and adequate objection to the absence of an agreement.[9] However, case law, including some cited by Denman, holds that an agreement to resolve a dispute through arbitration can be implied through a party's conduct. *See Ngheim,* 25 F.3d at 1440*; Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355 (9th Cir. 1983) (both so holding). *See also Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines, Inc.*, 320 F.3d 362, 368 (2nd Cir. 2003) (stating rule); *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 533 (5th Cir. 2000) (Dennis, J., dissenting) (distinguishing "agreement implied in fact" from estoppel in arbitration context).

---

[9] The question of arbitrability has two aspects: first, whether the parties agreed to arbitration (or are bound by another's agreement to arbitrate, *see In re Weekley Homes*, 180 S.W.3d 127, 130 (Tex. 2005)); and second, whether a particular claim or dispute is within the scope of the agreement. *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996). Most of the cases Denman cites, *e.g.*, *Executone*, 26 F.3d at 1323, deal with the second aspect.

The federal courts' holding is in accord with Texas contract law,[10] which provides that unless prohibited by a statute of frauds, an agreement can be inferred from a party's conduct.[11]  *Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972); *Double Diamond, Inc. v. Hilco Elec. Co-op., Inc.*, 127 S.W.3d 260, 267 (Tex.App.--Waco 2003, pet. denied).

Texas contract law further recognizes that implying the elements of an agreement from the conduct of the parties requires factual determinations. *See Emmer v. Phillips Petroleum Co.*, 668 S.W.2d 487, 490 (Tex.App.--Amarillo 1984, no writ) (citing *Haws & Garrett General Contractors*, 480 S.W.2d at 609).  The question presented in this case is thus whether the evidence supports an implied finding that Inn II, through its conduct, showed its agreement to arbitrate its existing dispute with Denman.

The conduct attributable to Inn II supporting such a finding[12] begins with the unqualified listing of Inn II as a respondent in appellants' arbitration demand response.

---

[10] Whether there is a valid arbitration agreement is a question of law for the court and is governed by state contract law.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *In re D. Wilson Const.*, 196 S.W.3d at 781.

[11] Denman correctly notes that neither the FAA nor the TGAA is a statute of frauds. The FAA applies only to written agreements, but does not declare other arbitration agreements invalid. *See Ngheim*, 25 F.3d at 1440. Similarly, section 171.002 of the TGAA limits application of the Act, but does not invalidate agreements beyond its scope.  *See, e.g., L. H. Lacy Co.*, 559 S.W.2d at 350.

[12] The trial court's findings of fact included a finding that Inn II "was named as a party, appeared, and fully participated, including asserting affirmative claims for relief, without objecting to arbitration.  Inn [II] has offered no, or insufficient evidence of a refusal to arbitrate, or timely objection."  The court made no finding of fact or conclusion of law of an implied agreement by Inn II for arbitration.

The response contained no objection to the arbitrator's consideration of the mechanic's lien's validity but requested a determination by the arbitrator that the lien should be removed. The pre-hearing letter to Denman's counsel was consistent with this request, acknowledging Denman "may have lien rights against Inn II." We agree with the trial court that, through counsel representing all arbitration respondents, Inn II fully participated in the arbitration hearing.

Appellants rely on *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-48, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).[13] *First Options* suggests the facts that a party participated in arbitration and even requested affirmative relief[14] should not be considered as evidence of an agreement to submit to arbitration if those acts were taken subject to an expressed objection to the arbitrator's jurisdiction. 514 U.S. at 946. In *First Options*, the record showed the Kaplans filed a written jurisdictional objection with the arbitrators and reasserted the objection during the proceedings. 514 U.S. at. 941; *Kaplan*, 19 F.3d at 1510-11. The Supreme Court characterized the Kaplans as "forcefully objecting" to the arbitrator's jurisdiction. 514 U.S. at 946.

As evidence it did not agree to arbitration, Inn II points to the oral statement at the opening of the arbitration hearing and the objection in its post-hearing brief. The statement made during the hearing was that the McGregors and Inn II "do not appear to face any

---

[13] They also quote the court of appeals opinion, *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1505 (3rd Cir. 1994), *affirmed*, 514 U.S. 938.

[14] Mr. Kaplan filed counterclaims in the arbitration proceeding. *Kaplan*, 19 F.3d at 1505. Inn II denies it requested affirmative relief. We find the record supports the trial court's finding that it did.

10

personal or corporate responsibility for the contract allegations here, [and should] be dismissed from the arbitration proceeding." The objection did not assert the absence of an arbitration agreement or otherwise challenge the arbitrator's jurisdiction. The trial court reasonably could have seen the statement as an assertion that the McGregors and Inn II had no liability under the construction contract. That Inn II, as owner of the property, was not directly liable to Denman under the construction contract would not necessarily invalidate Denman's lien.[15] We cannot agree that the statement is the equivalent of the objection to the arbitrator's jurisdiction made by the Kaplans in *First Options.* 514 U.S. at 946.

Only in the post-hearing brief did Inn II assert the arbitrator lacked jurisdiction based on the absence of a written arbitration agreement. It argued the Rule 11 agreement "did not include an [arbitration] agreement on behalf of the McGregors or Inn II." This position is inconsistent with the arbitration demand response in which PME, the McGregors and Inn II stated: "[p]ursuant to [the Rule 11] agreement, the parties to this arbitration case are: Claimant[s] Denman, Nance, and Respondents McGregor, Paul and Angela McGregor and Inn II."[16] Viewing the entire course of events, the trial court could reasonably conclude that Inn II had, by its conduct, agreed to submit the question of lien validity to the arbitrator, and only after that submission decided to advance its jurisdictional objection. *See Daniel*, 724

_____

[15] The arbitrator's award shows he ultimately agreed Inn II was not liable on the contract between PME and Denman.

[16] The post-hearing brief also argued the McGregors and Inn II objected at the hearing "on the grounds they did not agree to arbitration." As we have noted, the trial court was not required to agree that the statement made at the arbitration hearing asserted those grounds.

11

F.2d at 1357 (rejecting attempt to challenge arbitrator's authority after hearings but before arbitration award). We hold the record supports an implied finding that Inn II agreed to arbitration of the validity of the lien Denman placed on the Amarillo property and overrule appellants' first point.

POINT 2

By their second point, appellants contend the trial court erred in confirming the damages awarded to Denman against PME because PME established the federal common law ground for vacatur applicable when an arbitrator manifestly disregards the law. PME argues the arbitrator disregarded established law that a party fraudulently inducing another to enter a contract must "disgorge" profits it obtains from the contract.

Denman does not dispute that manifest disregard of the law is one of the narrow grounds on which an award may be vacated under the FAA. *See Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 381 (5th Cir. 2004) (recognizing manifest disregard of the law as accepted nonstatutory ground for vacatur). The ground requires proof of more than error or misunderstanding of the law. The arbitrator must have "appreciated the existence of a clearly governing principle but decided to ignore or pay no attention to it. *Id.* at 381-82. The law at issue must be well defined, explicit and clearly applicable. *Id.* at 382. The Fifth Circuit has further explained that an award should be upheld when it is manifest the arbitrator acted contrary to the applicable law unless significant injustice would result. *Sarofim v. Trust Co. of the West*, 440 F.3d 213, 216 (5th Cir. 2006).

12

We find PME's contention without merit. The record shows that whether the contract between Denman and PME was fraudulently induced by Denman was a disputed issue before the arbitrator. The evidence showed that while Hicks was acting as general contractor, Paul McGregor asked Denman's David Nance if he was aware of any "kickbacks or any side dealings" between Denman or any other contractors and Hicks and was told "no." At the arbitration hearing PME established that Denman had provided a vacation for Donald Hicks and his family. Hicks denied that gift was connected to either the Lubbock or Amarillo projects but was uncertain as to the date of the gift.

PME's fraudulent inducement theory is based on Nance's statement regarding "kickbacks." To establish fraudulent inducement, the elements of fraud must be established as they relate to an agreement between the parties. *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001). The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). The arbitrator rationally could have found Nance's statement was not false because the family vacation was not, under the circumstances, a "kickback" or "side deal." Or, the arbitrator could have determined the discussion between Nance and Paul McGregor did not occur in connection with negotiation of their subsequent contract, and PME thus did not show the statement was made with the intent

13

that PME should act on it in forming that contract. PME has not established the arbitrator manifestly disregarded the law and we overrule its second point.

POINT 3

Appellants' third point challenges the award of post-arbitration attorney's fees. In addition to the $40,606.55 of attorney's fees awarded by the arbitrator against PME, the trial court awarded $16,150 for the proceedings confirming the award, $5,000 in the event of an appeal to this court, and $8,000 more on appeal to the Texas Supreme Court. The order made both PME and Inn II liable for the additional amounts. Appellants argue the FAA does not provide for the award of post-arbitration attorney's fees and $7,246.80 of the fees awarded were for work on Denman's attempts to establish the priority of its lien on the property in the trial court.

Denman's motion for post-arbitration attorney's fees asserted the trial court had discretion to award attorney's fees under the FAA, citing 9 U.S.C. § 9, and *Commercial Refrigeration, Inc. v. Layton Const. Co.*, 319 F.Supp.2d 1267 (D. Utah 2004). Section 9 of the FAA authorizes a federal court to confirm an arbitration award. 9 U.S.C. § 9. The statute does not address the issue of attorney's fees in a confirmation proceeding and the Seventh Circuit has held the absence of express authority prevents such an award. *Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994); *see Zachry Const. Corp. v. Natkin Contracting, L.L.C.*, No. SA-04-CA-0405, 2006 WL 1169545 Slip op. at 11 (W.D. Tex. April 26, 2006) (citing *Menke*). *See also International Bank of Commerce v. International*

14

*Energy Development Corp.*, 981 S.W.2d 38, 54 (Tex.App.--Corpus Christi 1998, pet. denied). We will follow that authority here.[17]

Denman now argues the attorney's fees were awarded as a sanction and are appropriate because, it alleges, appellants' motion to vacate was groundless.[18] We cannot accept the argument because it requires that we assume the trial court ignored the procedure required for imposition of sanctions. Rule of Civil Procedure 13 requires the court to provide notice and a hearing before imposing sanctions, and to state the particular grounds in the sanction order. Tex. R. Civ. P. 13; *see Karagounis v. Property Co. of Am.*, 970 S.W.2d 761, 765 (Tex.App.–Amarillo 1998, pet. denied) (discussing procedural requirements). *See also* Tex. Civ. Prac. & Rem. Code Ann. § 10.003 (Vernon 2002) (requiring notice and an opportunity to respond before the imposition of sanctions). Neither the docket sheet nor any other aspect of the record reflects any notice of the court's intent to impose sanctions or the conduct of a hearing before the order awarding attorney's fees in the confirmation proceeding. The trial court's award of attorney's fees made no reference to sanctions or particular grounds for the award of the fees. We sustain appellants' third point.

---

[17] The award of attorney's fees for confirming the arbitration award in *Layton* was made on the basis of Utah state law permitting such awards but having no application here. 319 F.Supp.2d at 2171.

[18] A footnote in the motion for attorney's fees referred to a motion for sanctions Denman had filed against PME.

POINT 4

Appellants' final issue challenges the trial court's award of $27,104.49 in interest for the period between the arbitration award and the date of the final judgment, interest that was not included in the arbitration award. Contrary to their contention the FAA applies in this case, appellants cite the Texas Finance Code and case law applying the TGAA[19] in support of their contention post-arbitration pre-judgment interest is not authorized. Under federal law, a confirmed arbitration award bears interest from the date of the award. *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3rd Cir. 1986). We see no reason that rule should not be applied here. Appellant's fourth point is overruled.

Our disposition of appellants' third point requires that we modify the trial court's judgment to delete the award of $16,150 in attorney's fees and the conditional awards of attorney's fees on appeal. We affirm the judgment as modified.


James T. Campbell
Justice

---

[19] Appellants rely on *Blumberg v. Bergh*, No. 02-04-0138-CV, 2005 WL 1047592 (Tex.App.–Fort Worth May 5, 2005, no pet.) (Memorandum op.).

16