**Michael F. McGEHEE, Powergen Technologies, LLC, WillMac Palm Oil, LLC, Michael F. McGehee Companies, LLC, WillMac Trading, LLC, WillMac Minerals GP, LLC, and WillMac Minerals, LP, Appellants,**

v.

**Amy BOWMAN, Appellee.**

**No. 05–10–00598–CV.**

Court of Appeals of Texas, Dallas.

April 25, 2011.

Christopher Mills McNeill, Block & Garden, LLP, Anthony Leonard Vitullo, Fee, Smith, Sharp & Vitullo, L.L.P., Dallas, TX, for Appellants.

David Bell, Law Offices of David Bell, P.C., Dallas, TX, for Appellee.

Before Justices FITZGERALD, LANG–MIERS, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Appellants Michael F. McGehee (McGehee), Powergen Technologies, LLC, WillMac Palm Oil, LLC, Michael F. McGehee Companies, LLC, WillMac Trading, LLC, WillMac Minerals GP, LLC, and WillMac Minerals, LP perfected this interlocutory appeal asserting the trial court erred by denying appellants' application to compel arbitration under a written agreement to arbitrate between McGehee and appellee Amy Bowman. We conclude McGehee and Bowman are bound by a written agreement to arbitrate, which delegated the authority to determine substantive arbitrability of disputes between McGehee and Bowman to an arbitrator. Accordingly, we reverse in part the trial court's order denying McGehee's application to compel arbitration and remand the case to the trial court for further proceedings consistent with this opinion. In all other respects, we affirm the trial court's order.

### Background

On October 15, 2008, McGehee and Bowman entered into a Confidential Compromise and Settlement Agreement and Release (Settlement Agreement). McGehee and Bowman are collectively referred to as "the parties" to that Settlement Agreement. Pursuant to the terms of the Settlement Agreement, Bowman released McGehee, the "McGehee Business Interests (including, but not limited to Willmac Resources, L.L.C., Willmac Canada Corp., Willmac Minerals, L.P., Willmac Re-

sources, L.L.C., Michael F. McGehee Co. and Willmac Palm Oil, L.P.),"[1] and their respective "affiliates, partners, and benefit plans and their respective present and former respective officers, directors, employees, shareholders, owners, agents, trustees, administrators, sponsors, representatives, and attorneys" (referred to in the Settlement Agreement as the "Released Parties") from claims she may have against the Released Parties arising out of acts, omissions, or events arising in whole or in part prior to October 15, 2008.[2]

In February 2010, Bowman filed the lawsuit underlying this interlocutory appeal against appellants.[3] According to Bowman's petition, on the evening of October 15, 2008, after Bowman and McGehee executed the Settlement Agreement, Bowman was hired and began working for appellants as McGehee's administrative assistant. Bowman sued appellants for breach of that alleged oral contract of employment.

Pursuant to civil practice and remedies code section 171.021(a), appellants requested that the trial court compel mediation and, if necessary because of an impasse, arbitration with respect to Bowman's claim that the alleged oral employment contract had been breached, and stay or abate trial proceedings pending arbitration. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.021(a) (West 2005). Appellants contended that the dispute was subject to an alternative dispute resolution (ADR) provision of the Settlement Agreement. After an evidentiary hearing, the trial court denied appellants' application to compel arbitration under the Settlement Agreement and appellants' motion to stay or abate trial proceedings pending arbitration. Appellants filed this interlocutory appeal of the trial court's order denying the application to compel arbitration.[4]

## Analysis

In a single issue, appellants contend the trial court erred by failing to compel arbitration under the Settlement Agreement. Appellants contend the "foundational" issue underlying this lawsuit is whether McGehee, on behalf of himself and the other appellants, entered into an oral employment agreement with Bowman after the Settlement Agreement was executed and subsequently breached the employment agreement. Appellants assert this is a controversy between McGehee and Bowman that is subject to and governed by the ADR provision in section 21 of the Settlement Agreement.

Appellants complain that the trial court improperly ruled upon the scope of the arbitration agreement between McGehee and Bowman instead of compelling arbitration to resolve the arbitrability of the dispute. According to appellants, McGehee and Bowman expressly agreed to make

1. The term "McGehee Business Interests" is defined in the Settlement Agreement as "certain business entities owned, directly or indirectly, in whole or in part, by McGehee."

2. According to appellants, another controversy exists between Bowman and McGehee involving Bowman's assertion that McGehee breached certain obligations under the Settlement Agreement (Prior Controversy). The Prior Controversy is not a subject of this appeal but is the subject of alternative dispute resolution under the Settlement Agreement.

3. Two defendants named by Bowman in the underlying suit, Willmac, Inc. and Willmac Group of Companies, are not parties to this interlocutory appeal. The discussion in this opinion relates only to Bowman and appellants.

4. This Court granted appellants' motion for temporary stay of the trial court proceedings and ordered all proceedings in the trial court stayed pending further order of this Court. Contemporaneously with this opinion, this Court is issuing an order vacating its order staying proceedings in the trial court.

questions concerning the scope of the ADR provision of section 21 of the Settlement Agreement subject to mediation and, if necessary, arbitration. Appellants contend that in the event of any question regarding the scope of section 21 of the Settlement Agreement, the question must be resolved pursuant to the ADR procedures of that section and, assuming claims are determined to fall within the scope of section 21, the claims are then to be resolved pursuant to the ADR procedures of that section. Whether an agreement imposes a duty to arbitrate is a question of law which this Court reviews de novo. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003); *In re Trammell,* 246 S.W.3d 815, 820 (Tex.App.-Dallas 2008, no pet.).

In support of their argument, appellants rely on the language of section 21 of the Settlement Agreement, entitled "Arbitration," which provides in pertinent part:

Any and all controversies between the parties hereto, including, without limitation, controversies arising out of or relating to (i) the rights, claims and obligations arising out of or relating to this Agreement, (ii) the performance, interpretation or application of this Agreement, (iii) the arbitrability of any dispute, shall be first submitted to mediation with JAMS in Dallas, Texas, and then, if an impasse results, then binding arbitration by a party's giving written notice to such effect to the other party and the JAMS office in Dallas, Texas. Arbitration of such controversy, disagreement, or dispute shall be conducted by a single arbitrator in accordance with the JAMS Comprehensive Rules (the "Rules"). The arbitra-

tor shall decide the issues submitted to arbitration. . . .

Bowman does not challenge the validity of the Settlement Agreement; she responds that the controversy between her and appellants arose after the execution of the Settlement Agreement and, therefore, does not fall within the scope of the ADR provision set forth in section 21. Bowman asserts that since the mutual releases contained in the Settlement Agreement relate to claims arising before the effective date of the Settlement Agreement, the arbitration clause of the Settlement Agreement must necessarily apply only to disputes arising prior to the effective date of the Settlement Agreement.

■ Generally, the question of arbitrability is a gateway issue to be decided by a court rather than an arbitrator. *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Saxa Inc. v. DFD Architecture Inc.,* 312 S.W.3d 224, 229 (Tex.App.-Dallas 2010, pet. denied).[5] "Gateway matters" include whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in the agreement to arbitrate. *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643 (Tex. 2009) (orig.proceeding); *P. McGregor Enters., Inc. v. Denman Bldg. Prods., Ltd.,* 279 S.W.3d 717, 722 n. 9 (Tex.App.-Amarillo 2007, pet. denied) ("The question of [substantive] arbitrability has two aspects: first, whether the parties agreed to arbitration (or are bound by another's agreement to arbitrate); and second, whether a particular claim or dispute is within the scope of the agreement.") (citation omitted).

---

**5.** The parties do not dispute that this case is brought under the Texas General Arbitration Act (TAA). *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 171.001–.098 (West 2005). The issue of arbitrability is subject to a virtually identical analysis under either the Federal Arbitration

Act (FAA) or the TAA. *See* 9 U.S.C.A. §§ 1–16 (West 2009); *see also Saxa,* 312 S.W.3d at 229 n. 4; *ODL Servs., Inc. v. ConocoPhillips Co.,* 264 S.W.3d 399, 418 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (applying same analysis of arbitrability under the FAA and the TAA).

■ The parties, however, may agree to submit matters of substantive arbitrability to arbitration. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *Ernst & Young LLP v. Martin,* 278 S.W.3d 497, 500 (Tex.App.-Houston [14th Dist.] 2009, no pet.) ("[A]n arbitration clause that reallocates traditional court functions to the arbitrator is enforceable...."); *ODL Servs., Inc. v. ConocoPhillips Co.,* 264 S.W.3d 399, 413 (Tex.App.-Houston [1st Dist.] 2008, no pet.). But, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (citing *AT & T,* 475 U.S. at 649, 106 S.Ct. 1415); *see ODL Servs.,* 264 S.W.3d at 413. Silence or ambiguity about who should decide the arbitrability issue should not lead a court to presume the parties intended for the issue to be decided by the arbitrator. *First Options,* 514 U.S. at 944–45, 115 S.Ct. 1920; *ODL Servs.,* 264 S.W.3d at 413. Rather, a court must examine the arbitration agreement to decide if, when construed under the relevant state law, the agreement evidences a clear and unmistakable intention that the arbitrators will have the authority to determine the scope of arbitration. *Saxa,* 312 S.W.3d at 229; *ODL Servs.,* 264 S.W.3d at 413.

The trial court's letter to Bowman and appellants advising them of its denial of the motion to compel arbitration provides:

> The contract that [Bowman] alleges [appellants] breached was (according to [Bowman]) entered into after the October 15th Settlement Agreement. The court finds that the discrete allegation of breach of contract is not subject to the [alternative dispute resolution] provisions set forth in the October 15th Settlement Agreement.

Appellants contend the trial court erred by ruling on the scope of the arbitration clause rather than compelling arbitration to resolve arbitrability of the dispute. Employing a de novo standard of review, we must determine whether (1) McGehee and Bowman had an agreement to arbitrate and, if so, whether the agreement evidences a clear and unmistakable intention that an arbitrator will have the authority to determine the scope of arbitration, and (2) whether any agreement to arbitrate between McGehee and Bowman granted non-signatories the right to compel arbitration.

### Arbitrability of Dispute With Appellant McGehee

■ The Settlement Agreement was entered into by Bowman and McGehee, collectively referred to in the agreement as "the parties." Bowman and McGehee agreed that "any and all controversies" between them, including "the arbitrability of any dispute" shall be first submitted to mediation, and if an impasse results, to binding arbitration. Appellants and Bowman agree the ADR provision of the Settlement Agreement is unambiguous. That arbitration provision states not only that it encompasses any and all controversies between Bowman and McGehee, but also that is not limited to controversies regarding rights, claims and obligations arising out of or relating to the Settlement Agreement or the performance, interpretation or application of the Settlement Agreement. The plain, unambiguous language of the arbitration provision provides for arbitration of *all* controversies between Bowman and McGehee. *See Cash Am. Int'l Inc. v. Exch. Servs., Inc.,* 83 S.W.3d 183, 187 (Tex. App.-Amarillo 2002, no pet.) (plain language of arbitration provision provided for arbitration of "any and all disputes" between the parties to agreement).

■ A court must compel arbitration of issues relating to substantive arbitrability

where a valid arbitration clause clearly and unmistakably removes the determination of the appropriate scope of the arbitration from the court and places it with an arbitrator. *See Saxa,* 312 S.W.3d at 229–30; *see also Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 61 (Tex.2008) (court had no discretion but to direct trial court to compel arbitration where arbitration clause, which submitted to arbitration even disputes over scope of such arbitration clause, removes the "scope determination" from the court and places it with the arbitration panel). Bowman and McGehee clearly and unmistakably placed the arbitrability of their dispute within the scope of the arbitration provision of the Settlement Agreement. In no uncertain terms, they agreed that "the arbitrability of any dispute" between them shall first be submitted to mediation, and if an impasse results, to binding arbitration. We conclude that an arbitrator, rather than the trial court, has the authority to decide the arbitrability of the dispute between Bowman and McGehee. Accordingly, the trial court erred in denying McGehee's application to compel arbitration under the Settlement Agreement. We sustain appellants' sole issue in part and reverse the trial court's order denying McGehee's application to compel arbitration under the Settlement Agreement.

*Arbitrability of Disputes With Appellants Powergen Technologies, LLC, WillMac Palm Oil, LLC, Michael F. McGehee Companies, LLC, WillMac Trading, LLC, WillMac Minerals GP, LLC, and WillMac Minerals, LP*

▮▮▮ Appellants Powergen Technologies, LLC, WillMac Palm Oil, LLC, Michael F. McGehee Companies, LLC, WillMac Trading, LLC, WillMac Minerals GP, LLC, and WillMac Minerals, LP seek to compel arbitration under section 21 of the Settlement Agreement. The question is

whether these appellants, as non-signatories to the arbitration agreement, can compel arbitration. Whether a non-signatory can compel arbitration pursuant to an arbitration agreement depends upon the existence of a valid arbitration agreement between specific parties and is therefore a gateway matter for the court to decide. *In re Rubiola,* 334 S.W.3d 220, 224–25 (Tex.2011) (orig.proceeding).

▮▮▮ Parties to an arbitration agreement may grant non-signatories the right to compel arbitration. *Id.* at 222. An obligation to arbitrate not only attaches to one who has personally signed the written arbitration agreement but may also bind a non-signatory under principles of contract law and agency. *Id.* at 224–25. Generally, however, parties must sign arbitration agreements before being bound by them. *Id.* "Although '[a]rbitration agreements apply to nonsignatories only in rare circumstances[,]' the question of '[w]ho is actually bound by an arbitration agreement is [ultimately] a function of the intent of the parties, as expressed in the terms of the agreement.'" *Id.* (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan,* 345 F.3d 347, 355, 358 (5th Cir.2003)). Thus, we must decide whether McGehee and Bowman, as the parties to the Settlement Agreement, intended to grant the right to enforce their arbitration agreement to the appellants which are nonparties to the Settlement Agreement.

McGehee makes no contention on appeal that the parties to the Settlement Agreement intended to grant the right to enforce their arbitration agreement to the non-signatory appellants Powergen Technologies, LLC, WillMac Palm Oil, LLC, Michael F. McGehee Companies, LLC, WillMac Trading, LLC, WillMac Minerals GP, LLC, and WillMac Minerals, LP.[6] Indeed, the entirety of McGehee's argument on appeal regarding arbitrability address-

---

**6.** The Settlement Agreement provides that the   "McGehee Business Interests" released by

es only his assertion that the arbitration provision binds the parties to the Settlement Agreement.

Bowman contends her claims against Powergen Technologies, LLC, WillMac Palm Oil, LLC, Michael F. McGehee Companies, LLC, WillMac Trading, LLC, WillMac Minerals GP, LLC, and WillMac Minerals, LP involve entities not subject to the Settlement Agreement, and by implication that the parties to the Settlement Agreement did not intend to grant those entities the right to enforce the arbitration provision contained in the Settlement Agreement. In her brief, Bowman argues, "That appellant McGehee chose to enter into a new and separate relationship with [Bowman] after settlement of appellant McGehee's prior relationship with [Bowman], and chose to bring other parties on board with him, does not change the clear and unambiguous language of the Settlement Agreement that the agreement pertains only to the outstanding relationship between appellant McGehee and [Bowman] at the time the agreement was reached."

Nothing in the Settlement Agreement shows that the parties to the agreement intended to grant non-signatories the right to enforce the arbitration provision. *See Exxon Corp. v. W. Tex. Gathering Co.*, 868 S.W.2d 299, 302 (Tex.1993) (in the absence of allegation of ambiguity in the contract language, the instrument alone will be deemed to express the intent of the par-

ties); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983) (in construing a written contract, primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument). Therefore, the non-signatory appellants Powergen Technologies, LLC, WillMac Palm Oil, LLC, Michael F. McGehee Companies, LLC, WillMac Trading, LLC, WillMac Minerals GP, LLC, and WillMac Minerals, LP can not compel arbitration regarding a dispute or controversy between them and Bowman. We conclude the trial court did not err in failing to compel arbitration of Bowman's disputes with appellants Powergen Technologies, LLC, WillMac Palm Oil, LLC, Michael F. McGehee Companies, LLC, WillMac Trading, LLC, WillMac Minerals GP, LLC, and WillMac Minerals, LP. We affirm the trial court's order in part and overrule appellants' sole issue with regard to those appellants.

### Conclusion

We reverse in part the trial court's order denying appellant Michael F. McGehee's application to compel arbitration and we remand to the trial court for further proceedings consistent with this opinion. In all other respects, we affirm the trial court's order.

Bowman include, but are not limited to "Willmac Resources, L.L.C., Willmac Canada Corp., Willmac Minerals, L.P., Willmac Resources, L.L.C., Michael F. McGehee Co. and Willmac Palm Oil, L.P." Of these "McGehee Business Interests," only Willmac Minerals, L.P. is an appellant here. Moreover, the "McGehee Business Interests" referenced in the Settlement Agreement refers to business entities owned, directly or indirectly, in whole or in part by McGehee. However, the record contains no evidence of McGehee's ownership "directly or indirectly, in whole or in part" of appellants Powergen Technologies, LLC, Will-

mac Palm Oil, LLC, Michael F. McGehee Companies, LLC, Willmac Trading, LLC, or Willmac Minerals GP, LLC. In his verification to appellants' application to compel arbitration and to stay or abate proceedings pending arbitration, McGehee averred that he is an officer or authorized agent of Powergen Technologies, LLC, WillMac Palm Oil, LLC, Michael F. McGehee Companies, LLC, WillMac Trading, LLC, WillMac Minerals GP, LLC, and WillMac Minerals, LP, but McGehee made no attestation regarding ownership of those entities.