

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

Nos. 04-15-00779-CV; 04-15-00780-CV; 04-15-000781-CV & 04-15-00782-CV

**ALL AMERICAN EXCAVATION, INC.,**
Appellant

v.

**AUSTIN MATERIALS, LLC** d/b/a Ramming Paving Company,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court Nos. 2015-CI-10299; 2015-CI-10743; 2015-CI-13685 & 2015-CI-11880
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Karen Angelini, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  April 13, 2016

REVERSED AND REMANDED

All American Excavation, Inc. ("AAE") appeals the trial court's order in each of the underlying causes denying its motion to abate and compel arbitration. AAE contends the trial court erred in denying its motion to compel arbitration because AAE established as a matter of law the claims asserted against it in the underlying causes by Austin Materials, LLC d/b/a Ramming Paving Company were within the scope of a valid arbitration agreement. AAE further contends the trial court erred in failing to abate the underlying causes pending the arbitration. We reverse the trial court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2013, AAE and Ramming Paving entered into a Subcontract Agreement containing general provisions applicable to work to be performed by Ramming Paving for AAE. The work was generally described as asphalt paving, seal coat and striping services. The Subcontract Agreement stated that the owner, architect, and contract price would be determined by individual purchase orders. The Subcontract Agreement contained a broad arbitration provision encompassing "any dispute, controversy or claim" between the parties.

In 2015, Ramming Paving filed the underlying lawsuits against AAE claiming AAE had failed to pay Ramming Paving for various services and materials it had provided on four construction projects. AAE filed counter-claims asserting no amounts were due because of offsets and back charges for defective work. In addition, AAE filed a motion to compel arbitration and abate in each lawsuit.

On November 20, 2015, the trial court conducted a hearing on AAE's motions. At the hearing, AAE presented an affidavit from its President in each lawsuit. Ramming Paving presented argument during the hearing regarding various reasons the Subcontract Agreement and the arbitration provision contained therein were unenforceable, including lack of consideration or mutuality and absence of specificity or detail. The trial court took the matter under advisement at the conclusion of the hearing. After the hearing, both parties filed letter briefs further clarifying their arguments. The trial court subsequently signed orders denying AAE's motions, and AAE now appeals.

## VALIDITY OF AGREEMENT

"A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). "If the other party resists arbitration, the trial court must determine

whether a valid agreement to arbitrate exists." *Id.* Ordinary principles of state contract law determine whether a valid agreement to arbitrate exists. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015). If the evidence establishes a valid agreement, "the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration." *J.M. Davidson, Inc.*, 128 S.W.3d at 227. "The trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review." *Id.*

AAE contends it proved the validity of the agreement; therefore, the trial court erred in denying its motions to compel arbitration. Ramming Paving responds the agreement is not an enforceable contract because its terms were too indefinite and the agreement was not supported by consideration.

A.     Indefiniteness of Subcontract Agreement

Ramming Paving contends the Subcontract Agreement lacks specificity because it refers to documents in an exhibit which is not attached, refers to a purchase order which was not introduced into evidence, and does not specify the required retainage. AAE responds the Subcontract Agreement is a typical master agreement containing general terms which govern the parties' legal relationship upon the subsequent execution and acceptance of a purchase order or other similar request for work or services on a specific project.

Generally, "[i]n order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). In the context of a master service agreement between a contractor and a subcontractor, the master service agreement is not sufficiently definite to bind either party to perform any services. *Moser v. Aminoil, USA, Inc.*, 618 F. Supp. 774, 779 (W. Dist. La. 1985). The master service agreement "merely sets forth [the parties'] agreement to abide by certain terms should they enter into contractual relations in the future." *Id.* Once the

contractor requests the services of the subcontractor, however, the request provides the remaining material terms, and "the terms of the master service agreement are incorporated automatically into the written or verbal contract to perform the specified services." *Id*.

"The law favors finding agreements sufficiently definite for enforcement," particularly where services have been provided under the contract for which compensation was to be paid. *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 623 (Tex. App.—San Antonio 1996, writ denied). "Where the evidence shows that the parties intended to enter into an agreement, the courts should find the contract to be definite enough to grant a remedy provided that there is a certain basis for determining the remedy." *Id*.

In this case, the Subcontract Agreement provided the general terms that would govern any asphalt paving, seal coat and striping services Ramming Paving provided to AAE. The remaining material terms, including the identity of the specific project and the pricing terms, were to be provided in a subsequent purchase order exchanged between the parties. Once AAE and Ramming Paving agreed to the terms in a subsequent purchase order, the purchase order and the Subcontract Agreement together would provide all material terms, thereby forming an enforceable contract.

During the hearing before the trial court, Ramming Paving referenced the Houston court's decision in *ODL Servs., Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399 (Tex. App.—Houston [1st Dist.] 2008, no pet.), which it also cites in its brief. In that case, the predecessors of ODL Services, Inc. and ConocoPhillips Co. entered into a master agreement pursuant to which ODL agreed to provide services to Conoco. *Id*. at 403-05. The master agreement provided its terms would apply on Conoco's issuance and ODL's acceptance of a Request for Services ("RFS"). *Id*. at 404. In 2006, ODL entered into an agreement to provide services to Conar Construcciones, C.A., a Venezuelan company, which in turn had a contract with Conoco Venezuela C.A. ("CVCA"), an affiliate of, but a separate company from, Conoco. *Id*. at 405. After Conar defaulted under its

contract, a meeting was held on December 14, 2006, regarding the project at which representatives from ODL and CVCA were present. *Id.* Conflicting evidence was presented as to whether Conoco representatives also were present. *Id.*

In 2007, ODL made an arbitration demand on Conoco seeking almost $7 million for goods and services it provided on the project after the December meeting. *Id.* at 406-07. Conoco filed a petition for declaratory relief seeking to prevent ODL from pursuing arbitration under the master agreement. *Id.* at 407. ODL sought mandamus relief after the trial court denied its motion to compel. *Id.* at 403, 408. The Houston court noted "although the parties disputed whether the request for ODL's services that could trigger the Master Agreement could be made in ways other than by issuing and executing a formal RFS, they did not dispute that *some* kind of request by Conoco, and acceptance by ODL, was required to make the Master Agreement apply and for its arbitration clause to bind Conoco." *Id.* at 414. Although there was conflicting evidence on whether some type of triggering request was made, the trial judge resolved the conflicting evidence in favor of Conoco, "finding that ODL and Conoco did not enter into an agreement on December 14, 2006 that [invoked] the Master Agreement." *Id.* at 416. Instead, the trial court "found that CVCA (not Conoco) agreed on December 14, 2006, to begin paying [ODL] directly." *Id.* "Consequently, the trial judge did not abuse her discretion in concluding that no arbitration agreement existed between" ODL and Conoco. *Id.*

In the instant case, the only evidence presented with regard to the Subcontract Agreement were the affidavits of AAE's president in which he stated the Subcontract Agreement, which was attached to the affidavit as an exhibit, "was the master agreement between [the parties] concerning the work and project made the basis of the claims at issue in this lawsuit." The same affidavit was filed in each lawsuit. These affidavits are evidence that a request was made that triggered the Subcontract Agreement which thereby governed the completed work Ramming Paving performed

on each project. Because the affidavits were evidence establishing a definite, enforceable, valid agreement, the burden shifted to Ramming Paving. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227. Ramming Paving presented no controverting evidence at the hearing. Therefore, the *ODL Servs., Inc.* decision is factually distinguishable.

Because the only evidence established that AAE made a request for Ramming Paving's services which triggered the Subcontract Agreement for the work performed by Ramming Paving, we conclude the Subcontract Agreement coupled with the request was sufficiently definite to be enforceable.

### B. Consideration

Ramming Paving also contends the Subcontract Agreement and the arbitration provision lacked consideration. With regard to the Subcontract Agreement, "[a] contract must be based upon a valid consideration, in other words, mutuality of obligation." *Federal Sign v. Tex. Southern Univ.*, 951 S.W.2d 401, 408 (Tex. 1997). Consideration is a bargained for exchange of promises. *Id.*; *Marx v. FDP, LP*, 474 S.W.3d 368, 378 (Tex. App.—San Antonio 2015, pet. denied). As previously noted, the only evidence presented at the hearing before the trial court established AAE made a request for Ramming Paving's services which triggered the Subcontract Agreement with regard to the projects in question. Therefore, the evidence established Ramming Paving promised to provide AAE with its services on the projects, and AAE agreed to pay Ramming Paving for those services. Thus, the Subcontract Agreement was supported by sufficient consideration. *See In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (noting party who used the other party's services and network to obtain reimbursements for its services pursuant to a provider agreement for ten years could not claim agreement was without consideration); *United States ex rel. D.R. Swindle Constr., L.P. v. Travelers Cas. & Sur.*, No. 7:08-CV-00174-O, 2009 WL 1904852, at *2 (N.D. Tex. July 1, 2009) (holding sufficient consideration existed to support

subcontract agreement where plaintiff agreed to provide labor for a project in exchange for compensation from the defendant).

With regard to the arbitration provision, "[a]rbitration agreements, like other contracts, must be supported by consideration." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006). "In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract." *In re AdvancePCS Health, L.P.*, 172 S.W.3d at 607; *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676 (noting "consideration may take the form of bilateral promises to arbitrate"). If "one party can avoid its promise to arbitrate by amending the [arbitration] provision or terminating it altogether," however, the promise is illusory. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010). "When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract." *Id.*

The rule is different, however, when the arbitration provision is part of a larger underlying contract. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676; *In re AdvancePCS Health, L.P.*, 172 S.W.3d at 607. In that context, "the rest of the parties' agreement provides the consideration." *In re AdvancePCS Health, L.P.*, 172 S.W.3d at 607; *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676 (noting "when an arbitration clause is part of a larger, underlying contract, the remainder of the contract may suffice as consideration for the arbitration clause"). In this case, the arbitration provision is part of the larger Subcontract Agreement which provides the consideration. *See Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 853-54 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (holding underlying construction contract provided consideration for arbitration provision contained therein); *United States ex rel. D.R. Swindle Constr., L.P.*, 2009 WL 1904852, at *2 (holding consideration existed for arbitration provision in

subcontract agreement). Therefore, we hold the arbitration provision is supported by adequate consideration.

### C. Conclusion

Based on the foregoing, we hold AAE proved the existence of a valid agreement that was supported by consideration and sufficiently definite to be enforceable.[1]

### UNCONSCIONABILITY

In its brief, Ramming Paving also argues the Subcontract Agreement is unenforceable for reasons of unconscionability. Ramming Paving did not, however, present this argument to the trial court. A party must present argument to the trial court that an arbitration provision is unconscionable, or the argument is waived and cannot be considered for the first time on appeal. *See Winslow v. D.R. Horton America's Builder*, No. 04-12-00376-CV, 2013 WL 2368300, at *1 n.2 (Tex. App.—San Antonio May 29, 2013, no pet.); *950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship*, 316 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

### STAY OF REMAINING PROCEEDINGS

In its second issue, AAE contends the trial court abused its discretion in failing to abate the underlying cases pending the arbitration. Because the trial court denied AAE's motion to compel, it did not expressly rule on AAE's request to abate the claims involving parties other than AAE and Ramming Paving pending the outcome of the arbitration. We address AAE's second issue because it is likely to arise again on remand. *See Garza v. Cantu*, 431 S.W.3d 96, 107 n.7 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (addressing issue likely to arise again on retrial in

---

[1] Because we hold the arbitration agreement is valid, we do not address AAE's alternative argument regarding whether Ramming Paving's challenges to the agreement's validity presented an issue of substantive arbitrability which the arbitrator should have decided.

the interest of judicial economy); *Sheshtawy v. Sheshtawy*, 150 S.W.3d 772, 780 (Tex. App.—San Antonio 2004, pet. denied) (addressing issue likely to arise on remand).

During the hearing, AAE argued Ramming Paving's claims against the other parties in the underlying lawsuits were derivative of the claims between AAE and Ramming Paving. For example, if Ramming Paving did not prevail at arbitration, Ramming Paving could not recover on any surety bonds or foreclose on any liens which are the types of claims asserted against the other parties to the lawsuits. We agree that in order to resolve the claims against the other parties, a determination is first required as to whether Ramming Paving is entitled to recover against AAE, which is an issue to be resolved in the arbitration. Accordingly, the litigation against the other parties "must be abated to ensure that an issue [to be determined by the arbitrator] is not decided instead in collateral litigation." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 196 (Tex. 2007).

## CONCLUSION

Because AAE proved the existence of a valid, enforceable arbitration agreement, no defenses to the enforcement of the agreement were established, and no dispute was raised as to whether Ramming Paving's claims fall within its scope, the trial court erred in denying AAE's motions to compel. Accordingly, we reverse the trial court's orders denying AAE's motions to compel arbitration and "remand [these causes] with instructions to the trial court to enter [orders] compelling arbitration between the parties and staying all other proceedings pending the outcome of the arbitration." *Nabors Drilling USA, LP v. Pena*, 385 S.W.3d 103, 108 (Tex. App.—San Antonio 2012, pet. denied); *see also Henry v. Gonzalez*, 18 S.W.3d 684, 692 (Tex. App.—San Antonio 2000, pet. dism'd by agr.) (remanding cause with instructions to enter order compelling arbitration and staying all other proceedings pending the outcome of the arbitration).

Sandee Bryan Marion, Chief Justice